**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Melissa Menendez,<br><br>    Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>    Defendants. | No. CV-18-02470-PHX-JJT<br><br>**ORDER** |

At issue is the denial of Plaintiff Melissa Menendez's Applications for Supplemental Security Income Benefits and Disability Insurance Benefits by the Social Security Administration ("SSA") under the Social Security Act ("the Act"). Plaintiff filed a Complaint (Doc. 1) with this Court seeking judicial review of that denial, and the Court now addresses Plaintiff's Opening Brief (Doc. 18, "Pl. Br."), Defendant Social Security Administration Commissioner's Response Brief (Doc. 19, "Def. Br."), and Plaintiff's Reply Brief (Doc. 27, "Reply"). The Court has reviewed the briefs and Administrative Record (Doc. 11, "R.") and now reverses the Administrative Law Judge's decision (R. at 14–43) as upheld by the Appeals Council (R. at 1–8).

**I.    BACKGROUND**

Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income Benefits on March 16, 2015 for a period of disability beginning on August 1, 2014. (R. at 17.) Plaintiff's claims were denied on May 14, 2015. (R. at 17.) They

were denied on reconsideration on August 25, 2015. (R. at 17.) Plaintiff then appeared before an Administrative Law Judge ("ALJ") for a hearing on her claims. (R. at 17.) The ALJ denied her claims on January 16, 2018. (R. at 14–43.) On June 6, 2018, the Appeals Council denied her request for review of the ALJ's decision. (R. at 1–8). On August 3, 2018, Plaintiff filed this action seeking judicial review of the denials. (Doc. 1.)

The Court has reviewed the medical evidence in its entirety and finds it unnecessary to provide a complete summary here. The pertinent medical evidence will be discussed in addressing the issues raised by the parties. In short, upon considering the medical records and opinions, the ALJ evaluated Plaintiff's disability based on the following alleged impairments: status post bladder surgeries, fibromyalgia, bursitis of the hip, obesity, knee impairment, hypertension, degenerative disc disease of the cervical and lumbar spine, reflux esophagitis, and supraventricular tachycardia. (R. at 20.)

Ultimately, the ALJ evaluated the medical evidence and opinions and concluded that Plaintiff is not disabled. The ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments" in 20 C.F.R. Part 404. (R. at 23.) The ALJ also determined that Plaintiff has the residual functional capacity ("RFC") to perform light work, "except that she should not be exposed to hazards such as moving machinery or unprotected heights." (R. at 24.) Furthermore, the ALJ found that Plaintiff can "occasionally climb stairs and ramps", but "can never climb ladders, ropes, or scaffolds." (R. at 24.) Finally, the ALJ found that Plaintiff can perform the requirements of representative work such as telephone order clerk, charge account clerk, and bench hand. (R. at 34–35.)

## II. LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is

more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* To determine whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five–step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where she determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

. . . .

### III. ANALYSIS

Plaintiff raises three arguments for the Court's consideration: (1) the ALJ erred in rejecting the medical opinions of Dr. Kalinowski, treating urologist, and Dr. Hisscock, treating primary care physician; (2) the ALJ erred in rejecting Plaintiff's testimony; and (3) the ALJ erred in undervaluing the medical opinions of Dr. Campbell, treating orthopedic surgeon, and Dr. Woodward, examining psychologist, as to Plaintiff's limitations. (Pl. Br. at 4–5.) However, because the Court finds the first two issues dispositive of the case, the Court need not address Plaintiff's third argument.

#### A. The ALJ erred by giving minimal weight to the opinions of Plaintiff's treating urologist and primary care physician.

While "[t]he ALJ must consider all medical opinion evidence," there is a hierarchy among the sources of medical opinions. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Those who have treated a claimant are treating physicians, those who examined but did not treat the claimant are examining physicians, and those who neither examined nor treated the claimant are nonexamining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "The medical opinion of a claimant's treating physician is given 'controlling weight' so long as 'it is well–supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the record]." *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 1995) (citing 20 C.F.R. § 404.1527(c)(2)). If a treating physician's opinion is not given controlling weight, then the ALJ must consider the relevant factors listed in 20 C.F.R. § 404.1527(d)(2)–(6) and determine the appropriate weight to give the opinion. *Orn*, 495 F.3d at 632. The failure to consider these factors is reversible legal error. *Trevizo*, 871 F.3d at 676. It is error for an ALJ to disregard and not address a treating physician's opinion. *Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015).

If a treating doctor's opinion is contradicted by another doctor's opinion, the ALJ may not reject the treating doctor's opinion without "setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). A treating doctor's opinion will often be

entitled to significant deference, even when contradicted. *Orn*, 495 F.3d at 632–33. An ALJ may not reject a treating doctor's opinion with boilerplate assertions or illusory contradictions between doctors based on isolated reports rather than the record as a whole. *Garrison v. Colvin*, 759 F.3d 995, 1012–14 (9th Cir. 2014).

### 1. The ALJ erred by giving minimal weight to the opinion of Dr. Kalinowski, Plaintiff's treating urologist.

Dr. Kalinowski, Plaintiff's treating urologist since 2010, opined that Plaintiff's pelvic pain and urinary incontinence prevent her from working a full workday and that she would miss several days per month due to her impairments. (R. at 1302–03.) However, the ALJ gave the opinion minimal weight based on a purported inconsistency with the treatment notes of Dr. Jaacks, Plaintiff's obstetrician–gynecologist, that noted improvement of Plaintiff's pelvic pain with trigger point injections. (R. at 33.)

The purported inconsistency is not a specific and legitimate reason for rejecting Dr. Kalinowski's opinion. *Murray*, 722 F.2d at 502. Nor does it constitute the substantial evidence required to reject a treatment physician's opinion. *Id*. When read in context with Plaintiff's treating history, Dr. Jaacks's note about Plaintiff's improvement is not inconsistent with Dr. Kalinowski's opinion of severe impairment due to pain. *See Ghanim v. Colvin*, 763 F.3d 1154, 1161–62 (9th Cir. 2014); *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001) (noting that physician's statements must be read in context of their overall diagnosis and treatment history).

In rejecting Dr. Kalinowski's opinion, the ALJ relied on a single August 2016 report of improvement from Dr. Jaacks, but records after that time indicate that Plaintiff's pain persisted. (R. at 33.) For example, in a November 2016 appointment with Dr. Kalinowski, the Plaintiff presented with urinary incontinence, back, and pelvic pain. (R. at 1304.) Records from Plaintiff's visits with Dr. Uhrik, her pain management doctor, also indicate that her pain persisted with severity after the August visit with Dr. Jaacks. (R. at 1699–1702.) Plaintiff also visited with a naturopathic doctor in February 2017 and reported significant pain. (R. at 1547–73.) Finally, Plaintiff reported back to Dr. Jaacks in January

2017 with pain. (R. 1626.) Consequently, the ALJ erred because an isolated instance of improvement in symptoms is not a specific and legitimate reason for rejecting a treating physician's opinion that is supported by substantial evidence from numerous sources. *See Ghanim*, 763 F.3d at 1162–63; *Garrison*, 759 F.3d at 1014.

For similar reasons, the ALJ also erred because there was not substantial evidence to support the rejection of Dr. Kalinowski's opinion. The isolated instance of improvement does not serve as substantial evidence to contradict Dr. Kalinowski's opinion of severe impairment which was developed across years of treatment and corresponded to Plaintiff's other medical records and reports. *Ghanim*, 763 F.3d at 1164 (stating that occasional signs of improvement do not undermine consistent impairments in the overall record). While Defendant points to other instances of partial or temporary relief, these other instances do not constitute substantial evidence to contradict Dr. Kalinowski's opinion. (Def. Br. 17.) Notwithstanding the treatments that provided partial or temporary relief, Plaintiff's extensive medical records document mostly unmitigated pain that is consistent with Dr. Kalinowski's opinion. (R. at 917, 1555, 1626, 1699, 1797.) Furthermore, even if there was a contradiction of Dr. Kalinowski's opinion, the ALJ failed to apply the relevant factors to determine the appropriate weight which his opinion should be given, which is reversible error. *Trevizo*, 871 F.3d at 676.

Finally, the ALJ erred in failing to address Dr. Kalinowski's opinion related to Plaintiff's urinary incontinence. *Marsh*, 792 F.3d at 1172. Plaintiff repeatedly complained of, and underwent treatments for, urinary incontinence—an issue that persisted across her treatment history. (R. at 1304.) Dr. Jaacks's notes, relied on by the ALJ, also state that Plaintiff still had issues with urinary incontinence at the time of the August 2016 visit. (R. at 1638.)

### 2. The ALJ erred in giving minimal weight to the opinion of Dr. Hisscock, Plaintiff's primary care physician.

Dr. Hisscock, Plaintiff's treating primary care physician, opined that Plaintiff's impairments would preclude a full workday, limit her participation while at work, and

cause her to miss several days per month. (R. at 1234–35.) The ALJ gave minimal weight to Dr. Hisscock's opinion for four reasons: (1) there was no explanation regarding Plaintiff's hand–use limitations; (2) there were no reports of sedation due to Plaintiff's medication; (3) Plaintiff's travel to Vermont was inconsistent with her inability to sit for more than two hours; and (4) pain medications were effective in reducing her pain. The Court finds that each reason is not a specific and legitimate reason for rejecting a treating doctor's opinion, is not supported by substantial evidence, or both. The Court will address each reason in turn.

Substantial evidence in the record does not support the ALJ's rejection of Dr. Hisscock's opinion regarding Plaintiff's hand–use limitations. (R. at 33.) The ALJ rejected Dr. Hisscock's opinion because of a lack of explanation regarding Plaintiff's hand–use limitations in Dr. Hisscock's summary medical assessment. (R. at 33, 1234.) While an ALJ may reject a physician's opinion that is conclusory, unexplained, and without support in the record, that is not the case for Dr. Hisscock's opinion. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). Although the summary medical assessment did not include an explanation of Plaintiff's hand–use limitations, it did note that the limitations were documented by "objective, clinical or diagnostic findings" in Plaintiff's medical records. (R. at 1235.) Dr. Hisscock's records documented the hand–use limitations, including Plaintiff's carpal tunnel syndrome, so a full explanation in the summary assessment was unnecessary. *See Garrison*, 759 F.3d at 1014.

The ALJ also erred by rejecting Dr. Hisscock's opinion because of a perceived inconsistency in Dr. Hisscock's conclusion that Plaintiff experienced mild sedation due to medication and other evidence in the record. There is not substantial evidence to support any inconsistency between Plaintiff's medical records and Dr. Hisscock's opinion. (R. at 33.) First, Dr. Hisscock only opined to mild sedation due to Plaintiff's medications. (R. at 1235.) Second, mild sedation is supported by the fact that Plaintiff was prescribed Temazepam, a sedative medication. (R. at 1245.) Given Dr. Hisscock's relatively minor

conclusion that is substantiated by the fact that sedation was the desired effect of Plaintiff's prescribed medication, there was not substantial evidence to reject Dr. Hisscock's opinion.

The ALJ further erred in finding Dr. Hisscock's opinion unpersuasive because of Plaintiff's travel on one occasion to Vermont. (R. at 33.) The ALJ concluded that travel to Vermont necessarily evidenced an ability for Plaintiff to sit more than two hours. (R. at 33.) However, absent a specific record of the activities that the trip to Vermont entailed, which the ALJ did not develop, the ALJ's conclusory assertion cannot suffice to reject Dr. Hisscock's extensively documented conclusions. *Trevizo*, 871 F.3d at 676. Furthermore, a single interstate trip does not refute Dr. Hisscock's opinion that Plaintiff can sit less than two hours during a workday on a sustained basis. *Lester*, 81 F.3d at 833. Because the ALJ did not ask about the details of Plaintiff's travel to Vermont, (*e.g.*, how much Plaintiff sat or how often she alternated positions), Plaintiff's travel cannot serve as substantial evidence to reject Dr. Hisscock's opinion. In fact, Dr. Hisscock opined that Plaintiff has a medical need to regularly alternate positions between sitting, standing and walking, which highlights the need for the ALJ to have asked such questions to test Dr. Hisscock's opinion. (R. at 1234.) Furthermore, it appears that Plaintiff traveled out of state for her son's graduation, so her ability to travel for a special occasion is not necessarily representative of her ability to work on a sustained basis. (R. at 109); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (emphasizing that claimants should not be penalized for attempting to maintain normalcy in their lives).

Finally, the ALJ made the same error here that she made in evaluating Dr. Kalinowski's opinion. The ALJ cherry–picked records of improvement in Plaintiff's symptoms that belied their pervasiveness, severity, and unresponsiveness to treatment. (R. at 33.) The ALJ found Dr. Hisscock's opinion inconsistent with Plaintiff's pain–management doctor's finding that pain medication helped Plaintiff's symptoms. (R. at 33.) Again, partial or temporary relief of symptoms does not contradict a treating physician's opinion of impairments that considers the Plaintiff's entire treatment history. *Garrison*, 759 F.3d at 1014. Dr. Hisscock's opinion reflected consideration of Plaintiff's medical

history, including her response to pain medications. Additionally, Plaintiff's pain–management doctor, Dr. Uhrik, consistently documented widespread and persistent pain despite treatment with pain medication. (R. at 1699.) Plaintiff also described significant pain despite her use of pain medications during her treatment with a naturopathic doctor. (R. at 1554.) Finally, evidence of some improvement in symptoms is not inconsistent with the inability to sustain work and does not constitute substantial evidence to reject the opinion of a treating physician. *Ghanim*, 763 F.3d at 1162–63.

### B. The ALJ erred by improperly weighing Plaintiff's testimony.

An ALJ performs a two–step analysis to evaluate a claimant's testimony regarding pain and symptoms. *Garrison*, 759 F.3d at 1014. First, the ALJ evaluates whether the claimant has presented objective medical evidence of an impairment "which could reasonably be expected to produce the pain or symptoms alleged." *Liegenfelter*, 504 F.3d 1028, 1035–36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (*en banc*) (internal quotation marks omitted)). If the claimant presents such evidence then "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Garrison*, 759 F.3d at 1014–15 (citing *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). This is the most demanding standard in Social Security cases. *Id.* at 1015. "In evaluating the credibility of pain testimony after a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). The ALJ may properly consider that the medical record lacks evidence to support certain symptom testimony, but that cannot form the sole basis for discounting the testimony. *Id.* at 681.

Here, the ALJ erred in rejecting Plaintiff's symptom testimony on three bases. First, the ALJ rejected Plaintiff's testimony because "the claimant's statements are not consistent with medical signs and laboratory findings in the record." (R. at 30.) Second, the ALJ rejected Plaintiff's testimony because "[s]ome of [Plaintiff's] treatments were effective in

1  treating the [Plaintiff's] symptoms." (R. at 31.) Finally, the ALJ asserted that Plaintiff's
2  daily activities were inconsistent with the alleged severity of her symptoms. None of the
3  reasons provided by the ALJ constitute a specific, clear and convincing reason for rejecting
4  Plaintiff's testimony. *Garrison*, 759 F.3d at 1014.

The ALJ's finding that Plaintiff's statements were inconsistent with the medical records was based on non–contradictory and sometimes irrelevant records within the record. (R. at 30.) For example, the ALJ notes that Plaintiff's motor strength, tone, and gait were often reported to be normal. (R. at 30.) These facts, the ALJ insisted, showed that Plaintiff's widespread body pain was not as severe as claimed. However, those facts do not contemplate Plaintiff's diagnosed fibromyalgia, a disease that causes widespread pain, but is not inconsistent with normal motor strength, tone, and gait. (R. at 1289); *Revels v. Berryhill*, 874 F.3d 648, 662 (9th Cir. 2017).

Furthermore, the ALJ also placed Plaintiff in a catch–22 regarding her use of prescription pain medications. (R. at 30, 31.) Plaintiff was prescribed narcotic pain medication by her pain–management doctors to treat her widespread pain. (R. at 31.) However, Plaintiff's rheumatologist advised against the use of that pain medication to treat Plaintiff's fibromyalgia. (R. at 30.) Erroneously, the ALJ used the competing directions of Plaintiff's physicians to discredit her symptom testimony. (R. at 30, 31.) The ALJ asserted that Plaintiff's fibromyalgia must not have been severe because Plaintiff did not heed her rheumatologist's instructions to not take her prescribed pain medications. (R. at 30.) Yet the ALJ also maintained that Plaintiff's pain was not as severe as indicated because the same prescribed medications provided Plaintiff with some pain relief. (R. at 31.) Ultimately, the ALJ may not assume the role of physician or penalize Plaintiff for being unable to follow all her doctors' incompatible instructions. Plaintiff's testimony was not inconsistent with the entirety of her medical record and the ALJ's use of irrelevant and isolated instances in the record to prove otherwise was error. *Garrison*, 759 F.3d at 1014.

Like the ALJ's treatment of Plaintiff's treating physician's opinions, the ALJ erred in rejecting Plaintiff's testimony because of perceived inconsistencies between the

testimony and Plaintiff's response to treatment and daily activities. (R. at 31.) As discussed above, a temporary or partial reduction of symptoms is not a specific, clear and convincing reason for rejecting Plaintiff's testimony. *See Trevizo* 871 F.3d at 679–80. Neither are labored and sporadic daily activities inconsistent with a claimant's severe impairment. *Garrison*, 759 F.3d at 1016. Plaintiff's daily activities were not inconsistent with her symptom testimony. Beyond conclusory statements, the ALJ did not explain how Plaintiff's limited daily activities were inconsistent with severe impairment. *Trevizo*, 871 F.3d at 676. Furthermore, daily activities performed at home are often not perfectly transferable to a work environment because of the instant availability of rest at home. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). This was an important consideration the ALJ missed by the ALJ because Plaintiff complained of fatigue during daily activities. (R. at 110); *Garrison*, 759 F.3d at 1016 (stressing that ALJs must cautiously consider that impairments can preclude work and still be consistent with more than lying in bed all day).[1]

### B. The credit–as–true rule applies.

The credit–as–true standard, if applied here, would result in a remand of Plaintiff's case for a calculation and payment of benefits. *Garrison*, 759 F.3d at 1020. It applies if each part of a three–part standard is satisfied. *Id*. First, the record must have been fully developed and further administrative proceedings would serve no useful purpose. *Id*. Next, the ALJ must have failed to provide sufficient reasons for rejecting claimant's testimony or medical opinions. *Id*. Finally, if the improperly discredited evidence were credited as true, then the ALJ would be required to find the claimant disabled. *Id*.

The credit–as–true rule applies in this case. First, the record in this case was fully and extensively developed, such that further proceedings would be unproductive. Next, as discussed above, the ALJ failed to provide legally sufficient reasons for rejecting the medical opinions of Dr. Kalinowski and Dr. Hisscock. The ALJ also failed to properly weigh the Plaintiff's symptom testimony. Finally, if the improperly discredited evidence

---

[1] The ALJ also erred by not addressing, and consequently, rejecting Plaintiff's testimony regarding fatigue. *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015).

were credited as true, then the ALJ would be required to find that Plaintiff is disabled. The ALJ improperly discredited two treating physicians' opinions that Plaintiff is severely impaired by widespread pain and incontinence. The ALJ also discredited Plaintiff's testimony regarding the severity of her symptoms and their effects on her abilities to sustain work.

At the hearing before the ALJ, the Vocational Expert opined that a hypothetical individual with Plaintiff's characteristics who, "in an eight–hour day, could sit for less than two hours; [she] could stand or walk for less than two hours", and "needed breaks of – of five to nine minutes in duration, every 21 to 45 minutes, throughout the work day", would be precluded from Plaintiff's past or other work. (R. at 119.) If this evidence is properly credited, then considering the whole record, including the testimony of the Vocational Expert, the ALJ would be required to find that Plaintiff is disabled. (R. at 119.)

Therefore, it is unnecessary to remand for further administrative proceedings, and the Court will remand for a calculation and entry of benefits.

**IT IS THEREFORE ORDERED** reversing the January 16, 2018 decision of the Administrative Law Judge, (R. at 14–43), as upheld by the Appeals Council on June 6, 2018 (R. at 1–8).

**IT IS FURTHER ORDERED** remanding this case to the Social Security Administration for a calculation of benefits.

**IT IS FURTHER ORDERED** directing the Clerk to enter final judgment consistent with this Order and close this case.

Dated this 2nd day of October, 2019.

Honorable John J. Tuchi
United States District Judge